**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| **CHARLES and SHIRLEY DIXON,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 2:23 CV 264** |
| | ) | |
| **U.S. BANK N.A., *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**OPINION and ORDER**

Plaintiffs Charles and Shirley Dixon, *pro se*, sued multiple banks for fraud that they allege occurred in connection with their mortgage. (DE # 29.) In its March 25, 2025, opinion, the court dismissed all of plaintiffs' claims against all defendants except one: plaintiffs' claim that defendant Select Portfolio Servicing, Inc. ("SPS") violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*, by failing to respond to their Qualified Written Requests ("QWRs"). (DE # 106 at 7-8; DE # 29 ¶¶ 36-37.)

The court converted SPS's motion to dismiss into a motion for summary judgment as to that single remaining claim, because consideration of matters outside of the pleadings was necessary. (DE ## 32, 106.) For the reasons set forth below, the motion is granted.

## I. BACKGROUND

Defendant SPS services plaintiffs' mortgage loan. (DE # 107-1 ¶ 2.) SPS's website lists a specific address for "Notice of Error / Request for Information / Qualified

Written Request": P.O. Box 65277, Salt Lake City, Utah 84165-0277. (DE # 107-1 ¶ 11 & Ex. I at 101-02.) The same webpage lists a different address, P.O. Box 65250, for "General Correspondence." (*Id.* Ex. I at 101.) Plaintiffs submitted this webpage as their own exhibit. (DE # 128-1 at 10; DE # 128 ¶ 16.)

The First Amended Complaint alleges that plaintiffs sent QWRs to SPS by certified mail on September 7, 2022, and December 31, 2022, that SPS received them, and that SPS "did not provide Plaintiffs an accounting of the missing transactions" or "correct errors to their account." (DE # 29 ¶¶ 36-37.)

The first alleged QWR (the "First Letter") is dated August 22, 2022, and is titled "Qualified Written Request, Complaint, Dispute of Debt and Validation of Debt Letter, TILA Request." (DE # 107-1, Ex. A at 5.) It is addressed to SPS at P.O. Box 65250, SPS's general correspondence address. (*Id.*; *see also* DE # 128-1 at 4, 8.) The letter is seventeen pages long. Much of it demands evidence of the original security, the chain of transfer, and agreements among the entities involved in originating and securitizing the loan, and it states that plaintiffs have authorized an "audit" of the account. (DE # 107-1, Ex. A at 5-8.) It also asks for, among other things, account ledgers, payment records, and escrow analyses. (*Id.* at 9-10.) SPS received the First Letter on September 12, 2022, acknowledged it on September 14, 2022, and responded in writing on September 29, 2022. (DE # 107-1 ¶¶ 4-6 & Exs. B at 22, C at 25-28.) The response letter addresses, topic by topic, the subjects plaintiffs raised, and it encloses, among other things, a transaction history, a fee history, and an escrow disbursement history. (*Id.* Ex. C at 25-28.)

The second alleged QWR (the "Second Letter") is a three-page document titled "Notice of Fault" dated and notarized November 29, 2022. (DE # 107-1, Ex. D at 93-95.) Plaintiffs call it their "January Letter" and allege it was mailed January 3, 2023. (DE # 126 at 2; DE # 128 ¶ 8.) The certified-mail number on SPS's copy matches the number on plaintiffs' receipt, and SPS's records show that it received the letter on January 13, 2023. (*Compare* DE # 107-1 ¶ 7 & Ex. D at 93, *with* DE # 128-1 at 12, 15.) The Second Letter is also addressed to P.O. Box 65250, SPS's general correspondence address. (DE # 107-1, Ex. D at 94.) It invokes provisions of the federal and Indiana constitutions, asserts that SPS has failed to respond fully to the First Letter, and declares that if SPS does not answer all of the First Letter's questions within ten days, it will "agree to the Default Provisions" of that letter. (*Id.* at 94-95.) The letter itself asks no question about the account and identifies no error in it. (*Id.*) SPS acknowledged the Second Letter on January 17, 2023; on the same day it gave plaintiffs the name and contact information of the loan's owner; on February 9, 2023, it told plaintiffs it needed more time; and on March 10, 2023, through counsel, it responded in writing and explained why it did not consider the letter a QWR. (DE # 107-1 ¶¶ 7-10 & Exs. E at 96, F at 97, G at 98, H at 99-100.)

Plaintiffs also assert, in their briefing, that they mailed a third letter on April 14, 2023, to P.O. Box 65277, and that SPS never responded to it. (DE # 121 at 3; DE # 126 at 3; DE # 128 ¶¶ 8, 16, 19.) The complaint does not mention a letter sent in 2023. (*See* DE # 29 ¶ 36.) Further, the April 2023 letter is not in the record. Plaintiffs describe it as "substantially similar in content" to the other two. (DE # 128 ¶ 8; DE # 128-1 at 4-6.)

Plaintiffs' Rule 56(d) reply states that its Exhibit A contains all three letters (DE # 121 at 3), but Exhibit A is only a copy of the First Letter. (DE # 121-1 at 2-18.)[1]

Plaintiffs agree that SPS acknowledged the first two letters and provided written responses to them. (DE # 126 at 3; DE # 128 ¶ 17.) Their objection is to what those responses said. They contend that the responses did not address a $30,000 housing-assistance payment that was issued on their behalf in April 2021 and that, they say, does not appear in SPS's records. (DE # 126 at 1-3; DE # 128 ¶¶ 3-7, 18.) Plaintiffs concede that their letters "did not specifically reference the $30,000 payment." (DE # 126 at 6; *see also* DE # 128 ¶ 14.) They claim damages in the form of an inflated loan balance, improper fees, and inaccurate escrow calculations; out-of-pocket expenses for postage, copying, mailing, and research; time and effort; and emotional distress. (DE # 127 ¶¶ 7, 10-11; DE # 128 ¶¶ 7, 22.)

SPS moved to dismiss the claims against it, and that motion was granted as to all claims other than the RESPA claim. (DE # 106.) Because SPS had filed copies of its responses to plaintiffs' QWRs, which are matters outside the pleadings, the court converted SPS's motion to dismiss the RESPA claim into a motion for summary judgment under Federal Rules of Civil Procedure 12(d) and 56. (DE # 106 at 8-9.) The court set a briefing schedule and gave plaintiffs notice of the consequences of summary judgment by appending the district's "Notice to Pro Se Litigant" to its order and

[1] The only other document plaintiffs submitted on this subject is a certified-mail return receipt addressed to SPS at P.O. Box 65277; the delivery date on it is not legible. (DE # 121-1 at 20.)

directing SPS to serve the same notice. (*Id.* at 9 & n.3, 12-17; DE # 108.) The court also informed all parties that it would "consider the content of the parties' briefs only to the extent that it relates to plaintiffs' claim that SPS did not respond to plaintiffs' QWRs as required by RESPA," and "[a]rguments related to any other subject will not be considered." (DE # 106 at 9-10.)

SPS filed a supplemental memorandum and an affidavit. (DE ## 107, 107-1.) Plaintiffs did not respond by the extended deadline. (DE # 112.) Instead, they moved for discovery under Rule 56(d). (DE # 125 at 2; DE # 114.) The court denied that motion because plaintiffs sought discovery "on a wide array of topics that have nothing to do with the one claim remaining in this case," and it gave plaintiffs "one final chance to respond to the motion for summary judgment." (DE # 125 at 2.) Plaintiffs then filed a response and two declarations, which the court accepted as timely even though they were filed after the deadline. (DE ## 126, 127, 128, 133.) SPS replied. (DE # 134.) The converted motion for summary judgment is now fully briefed and ripe for ruling.

## II. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of showing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor, and it does not weigh evidence or assess credibility. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). But the nonmoving party may

not rest on the allegations of its pleading; it must come forward with specific facts showing a genuine issue for trial. *See Celotex*, 477 U.S. at 324. Summary judgment is "the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Koszola v. Bd. of Educ. of City of Chicago*, 385 F.3d 1104, 1111 (7th Cir. 2004). No genuine dispute exists when, viewing the record as a whole, a rational trier of fact could not find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Plaintiffs are proceeding pro se, and the court has read their submissions with that in mind.

## III. DISCUSSION

### A. The Claim Before the Court

The only claim at issue is plaintiffs' claim that SPS did not respond to their QWRs as RESPA requires. (DE # 106 at 8-10; DE # 125 at 1-2.) Despite this fact, plaintiffs have raised many other issues. Among other things, it argues that SPS's servicing records are inaccurate because they omit the $30,000 payment, that SPS did not conduct a reasonable investigation of the account, and that SPS reported derogatory information to credit reporting agencies. (DE # 126 at 4-8.) Those arguments do not concern whether SPS responded to a QWR. They fall outside the limits the court set in its prior order, and the court has not considered them. (*Id.* at 9-10; *see also* DE # 125 at 2.) The court expresses no view on whether SPS received or properly credited the $30,000 payment.

### B. The First and Second Letters

A QWR is written correspondence that identifies the borrower and the account and "includes a statement of the reasons for the belief of the borrower, to the extent

applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." *Id.* § 2605(e)(1)(B). The Seventh Circuit reads that provision generously. *See Catalan*, 629 F.3d at 687 ("Any reasonably stated written request for account information can be a qualified written request."). RESPA requires a servicer that receives a QWR from a borrower to acknowledge it within five business days and to respond within thirty business days. 12 U.S.C. § 2605(e)(1)(A), (e)(2). However, a servicer's duty to respond attaches to a request sent to the address the servicer has designated for such requests. *See* 12 C.F.R. § 1024.35(c); *Catalan v. RBC Mortg. Co.*, No. 05-cv-6920, 2008 WL 2741159, at *5 (N.D. Ill. July 8, 2008) ("borrowers who fail to submit their QWRs to [the designated] location do so at their peril"); *Lorang v. Ditech Fin. LLC,* No. 16-CV-425-JDP, 2017 WL 3891802, at *4 (W.D. Wis. Sept. 5, 2017) ("borrowers *must* send QWRs to the designated address") (emphasis in original); *Bivens v. Bank of Am., N.A.*, 868 F.3d 915, 919 (11th Cir. 2017); *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 182 (2d Cir. 2014); *Dale v. Selene Fin. LP*, No. 16-4296, 2018 WL 2222598, at *1 (6th Cir. Mar. 16, 2018).

SPS designated P.O. Box 65277 for QWRs and published that address on its website. (DE # 107-1 ¶ 11 & Ex. I at 101-02.) Plaintiffs do not dispute that; they submitted the same webpage and rely on it to show that they mailed the April 2023 letter to the designated address. (DE # 128 ¶ 16; DE # 128-1 at 10.) It is also undisputed that plaintiffs mailed the First Letter and the Second Letter to a different address, P.O. Box 65250, which SPS lists for general correspondence. (DE # 107-1, Exs. A at 5, D at 94, I at 101; DE # 128-1 at 4, 8, 15.) Plaintiffs' own declaration identifies only the April 2023

letter as having been sent to the designated address. (DE # 128 ¶ 16.) Because plaintiffs sent neither the First Letter nor the Second Letter to SPS's designated address, SPS had no obligation under RESPA to respond to either one. That is enough to resolve plaintiffs' claim as to those two letters.

The claim fails as to those letters for a second, independent reason: plaintiffs claim that SPS did not respond, and the undisputed evidence is that SPS did. SPS acknowledged and responded in writing to the First Letter within seventeen days of receiving it. (DE # 107-1 ¶¶ 4-6 & Exs. B at 22, C at 25-28.) It acknowledged the Second Letter four days after receiving it, notified plaintiffs that it needed more time, and responded in writing on March 10, 2023. (*Id.* ¶¶ 7-10 & Exs. E at 96, F at 97, G at 98, H at 99-100.) Plaintiffs agree that SPS acknowledged and responded to both letters. (DE # 126 at 3; DE # 128 ¶ 17.)

The Second Letter fails for a third reason. Even if it had been sent to the designated address, it is not a QWR. It does not ask for any information about the account and does not state any reason plaintiffs believe the account is in error. It demands that SPS answer the First Letter within ten days and declares that SPS's silence will constitute agreement to its terms. (DE # 107-1, Ex. D at 94-95.) A demand of that kind is not a request for "information sought by the borrower" or a statement that "the account is in error." 12 U.S.C. § 2605(e)(1)(B); *see Perron v. J.P. Morgan Chase Bank, N.A.*, 845 F.3d 852, 857 (7th Cir. 2017) (RESPA covers written requests alleging an account error or seeking information relating to loan servicing).

### C. The April 2023 Letter

Plaintiffs' remaining theory is that SPS never responded to a third letter, which they say they mailed on April 14, 2023, to the designated address. (DE # 126 at 3, 6; DE # 128 ¶¶ 16, 19.) There is no evidence in the record regarding this alleged letter. However, even if the court gives plaintiffs the benefit of every inference (assuming that this letter *was* a QWR, that SPS received it at the designated address, and that SPS did not respond), SPS is still entitled to summary judgment because plaintiffs cannot demonstrate damages.

A borrower may recover "any actual damages to the borrower as a result of" a servicer's failure to comply with RESPA. 12 U.S.C. § 2605(f)(1)(A). A plaintiff must therefore show actual injury and a causal connection between that injury and the alleged violation. *See Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 589, 591 (7th Cir. 2016); *Catalan*, 629 F.3d at 694; *see also Moore v. Wells Fargo Bank, NA*, 908 F.3d 1050, 1059 (7th Cir. 2018). SPS raised this point in its supplemental memorandum and again in its reply, and plaintiffs addressed damages in their response. (DE # 107 at 7-8; DE # 134 at 3; DE # 126 at 7.) Plaintiffs have not designated evidence from which a reasonable jury could find that SPS's failure to respond to the April 2023 letter caused them any actual damages.

Plaintiffs' evidence of damages falls into three groups. The first is the inflated loan balance, improper fees, and inaccurate escrow calculations. By plaintiffs' own account, these result from the alleged omission of the $30,000 payment from SPS's records after the payment was issued on April 20, 2021, because, as Mr. Dixon puts it,

"the account has been serviced as if the payment was never received." (DE # 127 ¶¶ 3, 7; DE # 128 ¶¶ 3, 7.) That alleged omission predates the April 2023 letter by two years. Plaintiffs concede that their letters "did not specifically reference the $30,000 payment," and they describe the April 2023 letter as substantially similar to the others. (DE # 126 at 6; DE # 128 ¶ 8.) They point to no evidence that a response to a letter that did not identify the payment should have led SPS to credit it. The court does not decide whether SPS should have credited the payment; that question is outside the claim before the court. The point is only that this injury, as plaintiffs describe it, is traceable to the alleged omission and not to SPS's silence in response to one letter. *See Diedrich*, 839 F.3d at 591, 593.

The second group is plaintiffs' out-of-pocket expenses. The postage and mailing costs listed in plaintiffs' Exhibit E are the cost of sending their letters by certified mail: $8.93, $7.85, and $8.93. (DE # 128-1 at 12.) Plaintiffs incurred those costs when they mailed the letters, before SPS could have failed to respond to any of them, so they cannot be damages incurred "as a result of" a failure to respond. The research expenses are no different. Plaintiffs say they paid a researcher nearly $1,500 because SPS's responses were inadequate, and they tie that expense to SPS's responses to the earlier letters, not to the absence of a response to the April 2023 letter. (DE # 126 at 3-4, 7.) The payment records that follow Exhibit E's list of "Research / Administrative" expenses show payments of $250, $500, and $250, dated February 6, May 13, and May 28, 2022, months before plaintiffs sent the First Letter; the dates of the remaining entries are not legible. (DE # 128-1 at 12-13.)

The third group is plaintiffs' time and emotional distress. Plaintiffs state that they spent "substantial time and effort" and experienced "stress, frustration, and inconvenience," but they attribute both to "the ongoing unresolved discrepancy," that is, the $30,000 payment. (DE # 127 ¶ 11; DE # 128 ¶ 22(c)-(d).) Evidence of that kind must connect the claimed harm to the RESPA violation itself. *See Diedrich*, 839 F.3d at 593. General statements that do not connect any particular harm to SPS's failure to answer one letter do not satisfy a party's obligation to "show what evidence it has that would convince a trier of fact to accept its version of events." *Koszola*, 385 F.3d at 1111.

Finally, plaintiffs invoke RESPA's provision for additional damages in the case of a "pattern or practice of noncompliance." (DE # 126 at 8; *see* 12 U.S.C. § 2605(f)(1)(B).) Their argument counts SPS's "repeated failures to investigate multiple written requests" together with the unanswered April 2023 letter. (DE # 126 at 8.) As explained above, SPS had no obligation under RESPA to respond to the first two letters, yet it responded to them anyway. What remains, at most, is a single unanswered letter, which is not a pattern or practice.

## IV. CONCLUSION

For the reasons set forth above, SPS is entitled to summary judgment on plaintiffs' RESPA claim, so SPS's converted motion for summary judgment (DE # 32) is **GRANTED.** All other claims and defendants were dismissed in the court's prior order (DE # 106), so no claims remain in this case. Therefore, the Clerk is directed to **ENTER FINAL JUDGMENT** as follows:

Judgment is entered in favor of defendants U.S. Bank NA, Mortgage Loan Asset-Backed Certificates, The PNC Financial Services Group Inc NA, Bank of America NA, Credit Suisse First Boston Mortgage Securities Corporation, Credit Suisse First Boston Mortgage Acceptance Corporation, and Does 1-5; and against plaintiffs Charles and Shirley Dixon, who shall take nothing by way of their complaint.

**SO ORDERED.**

Date: November 19, 2026

s/James T. Moody
SENIOR JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT